UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GULF COAST BANK AND TRUST CO. | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 17-12312 |
| | * | |
| HOWARD G. ANDERS | * | SECTION "L" (4) |
| | * | |

**ORDER AND REASONS**

Before the Court is Plaintiff's unopposed motion for summary judgment. R. Doc. 44. For the reasons that follow, the unopposed motion is GRANTED.

I.     BACKGROUND

This breach of contract action arises out of a Receivables Purchase Agreement ("RPA") between Plaintiff Gulf Coast Bank and Trust Company and Newberry Bakers, Inc. (which is not a party to this case). Defendant Howard Anders signed a Limited Guaranty agreeing to be solidarily liable for Newberry's obligations under the RPA. Gulf Coast sued Anders for his alleged breach of the Limited Guaranty, and now moves for summary judgment. The motion is unopposed.

II.    LAW AND ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions,"

"conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the non-moving party. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The Court may not grant Gulf Coast's motion for summary judgment "merely because it is unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). Indeed, "[t]he movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Hetzel v. Bethlehem Steep Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

Having reviewed the evidence and arguments submitted by Gulf Coast, the Court finds that Gulf Coast's unopposed motion has merit. Under the terms of the Limited Guaranty, Texas law controls. Gulf Coast is entitled to summary judgment if it shows "(1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor." *Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 246 (Tex. App. 2017).

   a. The Underlying Contract – the Receivables Purchase Agreement

In September 2016, Gulf Coast and Newberry Bakers entered in to a Receivables Purchase Agreement ("RPA"). The RPA entails an agreement whereby Newberry would, among other things, occasionally offer to sell its unpaid accounts receivable to Gulf Coast and, in exchange,

2

Gulf Coast would purchase certain unpaid receivables in its sole discretion. The RPA stated that all "invoices related to all of the Receivables … shall set forth the Lockbox Address as its sole address for payment. [Newberry] shall establish the lock box with [Gulf Coast] under [Gulf Coast's] exclusive control using the Lockbox Address and shall request in writing or otherwise take reasonable steps to ensure that all payments be sent directly to such Lockbox." R. Doc. 44-2 at 1-2. It also required Newberry to deliver to Gulf Coast "any payment or proceeds that it may receive with respect to any Receivable Asset" within one business day following Newberry's receipt thereof. *Id.* at 2. If Newberry failed to do so, it became liable to Gulf Coast for a Misdirected Payment Fee. *Id.*

The RPA also required each Receivable offered for sale to be free from any defenses, disputes, offsets, counterclaims, or rights of return or cancellation. Newberry's failure to abide by its obligations under the RPA constitutes an "Event of Default," and Newberry becomes "obligated to repurchase" the Receivable.

As collateral for its obligations under the RPA, Newberry granted to Gulf Coast a continuing first priority security in and to all of Newberry's current and future "(i) accounts, chattel paper, other Receivables, instruments (including promissory notes), investment property, documents, and general intangibles; including without limitation all reserve accounts, Residual Payments, credits and reserves, and letter-of credit rights, (ii) all deposit accounts, (iii) all equipment and inventory, and (iv) all proceeds from any of the foregoing" (the "Collateral"). R. Doc. 1-1.

Under the RPA, Newberry expressly warrants and represents that "the Collateral is not subject to, and is free and clear of, any lien, claims, pledge, security, or encumbrance of any kind,

3

other than those granted to [Gulf Coast]" under the RPA. R. Doc. 44-2 at 3. These representations and warranties are "continuing in nature and … remain in full force and effect until all obligations and sums owing to [Gulf Coast] by [Newberry] have been fully performed, paid and satisfied, whether or not [the RPA] is canceled or terminated." *Id.* The RPA provides that an Event of Default occurs when "any warranty of representation [in the RPA] proves to be false in any way, however minor." *Id.*

### b. *Anders's Guaranty of the RPA*

Anders was Newberry's president. In October 2016, he executed a Limited Guaranty, in which he "absolutely and unconditionally agree[d] to … guarantee the prompt and punctual payment, performance and satisfaction" of certain obligations under the RPA (the "Limited Guaranty"). Under the Limited Guaranty, Anders is liable for any failure by Newberry to deliver "all payments or proceeds received by [Newberry] with respect to any [Receivable] which [are] not delivered to [Gulf Coast] with the one (1) Business Day delivery deadline provided in the RPA." *Id.* Anders also guaranteed the prompt and punctual payment, performance, and satisfaction of all of Newberry's "RPA Warranty Obligations," which, under the terms of the Limited Guaranty, means "the obligations and liabilities of [Newberry] in connection with its warranty under the RPA that each Factored Receivable … is a bona fide existing obligation of the account debtor thereunder created by the sale and delivery of goods or the rendition of services in the ordinary course of [Newberry's] business, that is unconditionally owed and that the account debtor's payment obligations is not and will not be subject to any defenses, disputes, offsets, counterclaims, or rights of return or cancellation."

4

The Limited Guaranty provides that Anders's "obligations and liability under [the Limited Guaranty] shall be on a 'solidary' or 'joint and several' basis along with [Newberry] to the same degree and extent as if [Anders] had been and/or will be a co-principal obligor and/or co-maker of the RPA Warranty Obligations."

    *c. Trigger of Obligations under the RPA*

In October 2016, Gulf Coast sent a Notification of Change Remittance to Wal-Mart, one of Newberry's account debtors, notifying it that "[t]o the extent that [it is] now indebted or may in the future become indebted to [Newberry], payment thereof is to be made to [Gulf Coast], for the account of [Newberry]." *Id.* at 5. Notwithstanding the RPA's requirement that payments on all receivables were to be sent directly to Gulf Coast, Anders caused Wal-Mart to pay Newberry instead. Newberry received payments and proceeds with respect to one or more of its Receivables for the Wal-Mart account, but failed to deliver those payments and proceeds to Gulf Coast (the "Misdirected Accounts"). Newberry's failure to comply with its obligations under the RPA constitutes an Event of Default. Payment with respect to the Misdirected Accounts was received by Newberry, but was not delivered to Gulf Coast within one business day as required by the RPA. The full payment of Misdirected Accounts is guaranteed by Anders as part of the RPA Warranty Obligations.

Further, certain accounts were rejected for payment by the account debtor because of an alleged offset, credit, or other defense, which violated Newberry's warranty under the RPA that each Receivable is free from any defenses, disputes, offsets, counterclaims, or rights of return or cancellation. Payment of the Disputed Accounts is guaranteed by Anders as part of the RPA Warranty Obligations.

*d. Anders's Failure to Perform*

Finally, there is no genuine dispute of material fact that Anders has failed or refused to perform his obligations under the Limited Guaranty. Newberry breached its obligations under the RPA and, despite the Limited Guaranty, Anders did not make full payment of the Misdirected Accounts or Disputed Accounts to Gulf Coast. Accordingly, there is no genuine issue of material fact, and Gulf Coast is entitled to judgment as a matter of law on its breach of the Limited Guaranty claim against Anders.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that Gulf Coast's unopposed motion for summary judgment (R. Doc. 44) is **GRANTED**.

New Orleans, Louisiana, this 28th day of May, 2019.

_____
UNITED STATES DISTRICT JUDGE